## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------- x
    :
In re    :    **Chapter 11**
    :
**CLAIRE'S STORES, INC.**, *et al.*,    :    **Case No. 18– _____**
    :
    Debtors.[1]    :    **(Joint Administration Requested)**
    :
-------------------------------------------------------- x

## MOTION OF DEBTORS FOR ENTRY OF ORDER
## (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
## OBLIGATIONS TO CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Claire's Stores, Inc. ("**Claire's**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

### Relief Requested

1.      By this Motion, the Debtors request that the Court (i) authorize, but not direct, the Debtors to pay non-priority, prepetition claims held by Critical Vendors (as defined herein) in an amount not to exceed **$7.9 million** on an interim basis and **$11.7 million** on a final basis (with respect to both periods, the "**Critical Vendor Cap**") and (ii) grant related relief.[3]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Claire's Inc. (6919); Claire's Stores, Inc. (0416); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Puerto Rico Corp. (6113); and CSI Canada LLC (7936).  The Debtors' corporate headquarters and service address is 2400 West Central Road, Hoffman Estates, Illinois 60192.

[2]   The facts and circumstances supporting this Motion are set forth in the First Day Declaration (as defined herein) and the *Supplemental Declaration of Scott E. Huckins In Support of the Debtors' (I) Foreign Vendors Motion and (II) Critical Vendors Motion* (the "**Vendor Declaration**"), each filed contemporaneously herewith.

[3]   Contemporaneously herewith, the Debtors have sought authority, but not direction, to pay certain claims held by prepetition creditors pursuant to the (i) *Motion of Debtors for Entry of Order (I) Authorizing the Debtors to Pay Certain Prepetition Obligations to Foreign Vendors and (II) Related Relief*  (the "**Foreign Vendors Motion**") and the (ii) *Motion of Debtors for Entry of Order (I) Authorizing Debtors to Pay Certain Prepetition Claims of*

2.      The Debtors further request that the Court (i) authorize and direct all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Commencement Date (as defined herein), and (ii) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

3.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## Preliminary Statement

4.      The Debtors are a leading retailer of fashionable jewelry and accessories, primarily for young women, teens, tweens and children.  The success of their businesses derives in large part from their ability to sell a broad and dynamic array of fashionable and unique merchandise to their customers.  The Debtors offer an experiential retail experience that they believe cannot be readily duplicated either by their competitors or through on-line purchasing. This market is, without question, highly competitive and fast-changing as customer preferences

---

*(A) Shippers, Lienholders, and (B) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority of Undisputed and Outstanding Prepetition Orders, and (III) Granting Related Relief* (the "**Shippers, Lienholders, and 503(b)(9) Claimants Motion**").  By this Motion, the Debtors do not seek authority to pay prepetition claims that may be paid through the relief requested pursuant to the Foreign Vendors Motion or the Shippers, Lienholders, and 503(b)(9) Claimants Motion.

(and demands) evolve on a near-continuous basis.  The Debtors must be able to respond quickly to movements in market trends and customer preferences, such that their customer base remains confident that sought-after rings, necklaces, earrings, accessories, and the like will be available at all times at the Debtors' store locations.  Importantly, the Critical Vendors are integrated into the Debtors' highly customized supply chain, making it difficult for the Debtors to replace them in a timely manner.  The Debtors' inability or failure to meet customer expectations immediately at the outset of these chapter 11 cases in this regard could be fatal to their restructuring efforts.

5.      Consequently, the Debtors seek authority to pay prepetition amounts owed to Critical Vendors (such amounts, the "**Critical Vendor Claims**") in an amount not to exceed the applicable Critical Vendor Cap, subject to the terms and conditions set forth herein.  In particular, the Debtors also seek authority to condition such payments upon the Critical Vendors' commitment to continue providing goods and services to the Debtors on trade terms at least as favorable as those terms in effect before the Commencement Date or any recent trade contraction.

### Jurisdiction

6.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3

**Background**

7.     On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Scott E. Huckins In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[4]

**Debtors' Merchandising and Supply Chain**

10.     The Debtors believe they are a "Girl's Best Friend" and are a favorite shopping destination for teens, tweens, and kids.   Their target demographics include girls and young women ages 3–18 (for their Claire's-branded store locations) and ages 18–35 (for their Icing-branded store locations).   Within their approximately 5,300 company-owned stores and concession locations under the *Claire's®* and *Icing®* marks in the United States and Puerto Rico, the Debtors offer a broad-based variety of merchandise to this core customer base,

---

[4]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

including jewelry, accessories, beauty products, lifestyle accessories, and seasonal items.  At any given store location, the Debtors stock up to approximately 13,000 different stock keeping units, and the Debtors believe their ability to offer such a wide selection is a key differentiator for their customer base.  Relatedly, the Debtors believe that their proven quality and selection have permitted parents to trust the *Claire's*® brand as a proven, age-appropriate retailer for their children.

11.    For example, the Debtors offer a market-differentiating experiential retail experience for their customers.  The Debtors' stores have pierced the ears of approximately 100 million customers worldwide, including more than 3.5 million customers in Fiscal 2017 alone.  This seminal point of contact begins an important relationship with the Debtors' customer base, and establishes a relationship of trust and confidence as between the Debtors, their customers, and their customers' families.  To build and maintain this relationship, however, the Debtors themselves rely on a well-developed network of essential vendors, including merchandisers, service providers, and others who are able to meet the Debtors' product and service requirements with the speed, reliability, and quality that the Debtors (and their customers) have come to expect.[5]

### A.    Merchandise Vendors

12.    It is an obvious fact, but one that bears repeating: merchandise sales are the lifeblood of the Debtors' businesses.[6]  Maintaining a steady supply of merchandise, in turn, requires healthy, stable relationships with several key merchandise suppliers (the "**Merchandise**

---

[5]    In certain instances, payment to a particular Critical Vendor may be disbursed by RSI International Ltd. ("**RSI**"), a non-Debtor subsidiary.  Any disbursements made by the Debtors to RSI on account of Critical Vendor Claims will be subject to the applicable Critical Vendor Cap.

[6]    While a substantial number of the Debtors' merchandising suppliers are located outside of the United States, and are subject to the relief requested pursuant to the Foreign Vendors Motion, certain Critical Vendors, including essential merchandisers, are located in the United States.

Vendors"). For instance, a number of the Merchandise Vendors are the exclusive distributors for certain high-demand, licensed products whose value derives in large part from their brand identities. Other Merchandise Vendors provide goods, such as makeup, beauty accessories and ear piercing technology, equipment, and supplies. These Merchandise Vendors are subject to a rigorous quality control process undertaken by the Debtors. It generally takes months (or even years) before a new vendor may be approved by the Debtors for inclusion in the Debtors' supply chain.

13. The Debtors do not typically engage with their Merchandise Vendors pursuant to long term contracts. Rather, these relationships may be maintained on a purchase order by purchase order basis or under short-term agreements subject to renewal. Hence, the Debtors have to guaranty that these merchandisers may be compelled to supply goods absent assurance of payment. Moreover, due in part to the Debtors' consistent and timely payments, the Debtors have historically operated with their Merchandise Vendors under favorable trade terms (such as volume and other discounts), which contribute to the Debtors' overall profitability and liquidity. Failing to pay prepetition amounts owed to the Merchandise Vendors risks altering their ordinary course relationships with the Debtors, which in turn may lead to material disruptions in the Debtors' businesses.

**B.    Non-Merchandise Vendors**

14. In addition to their Merchandise Vendors, the Debtors also rely upon a variety of other service providers who are integral to ensuring that the Debtors are able to attract customers and close day-to-day transactions (such parties, the "**Non-Merchandise Vendors**" and, together with the Merchandise Vendors, the "**Critical Vendors**"). For instance, the Non-Merchandise Vendors may provide technical support for store equipment or ear piercing operations, critical on-site maintenance and refurbishment, as well as other essential services. In

6

many instances, the Non-Merchandise Vendors are the only vendors able to provide their services, either for practical (*e.g.*, expertise and capacity) or for contractual reasons (*e.g.*, designated providers required pursuant to other contracts).

15.     The services the Non-Merchandise Vendors provide for the Debtors ensure that customers have ready access to the Company's products both online and in physical stores.  The Non-Merchandise Vendors also facilitate the Debtors' ability to move inventory between stores in order to maximize operational efficiency.  These services are all key to promoting brand awareness, building customer loyalty, and driving customer traffic, all of which inure to the benefit of the Debtors' estates and all stakeholders.

## Critical Vendor Process

16.     The Debtors and their advisors engaged in a comprehensive process to (i) identify those vendors, suppliers and/or service-providers that may be "critical" to the Debtors' businesses and (ii) quantify the relief necessary to avoid immediate and irreparable harm to the Debtors at the outset of these chapter 11 cases.  In this process, the Debtors, with the assistance of their restructuring professionals, assessed a variety of factors, including:

- the goods or services provided by a vendor or supplier;

- whether goods or services are provided pursuant to a contract or on a purchase-order basis;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical services on a postpetition basis;

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation;

- whether the vendor is a sole- or limited-source or high-volume supplier for branded and "in-demand" inventory due to particular local, regional, or national customer preferences;

- whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor; and

- whether failure to pay the particular vendor could jeopardize the Debtors' valuable proprietary interest in merchandise.

17.     As a result of this analysis, the Debtors identified the universe and type of vendors whose support remains essential to the Debtors' own ability to preserve and enhance value through the seamless transition of their operations into chapter 11.

**Customary Trade Terms**

18.     In exchange for payment of the Critical Vendor Claims, the Debtors propose to use all appropriate efforts to require each Critical Vendor to provide as favorable trade terms, practices, and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) as those trade terms, practices, and programs in place in the 180 days prior to the Commencement Date (collectively, the "**Customary Trade Terms**").  Thus, where appropriate, the Debtors seek authority, but not direction, to require as a condition to payment of a Critical Vendor Claim that the applicable Critical Vendor (including a Critical Vendor whose Critical Vendor Claim may be entitled to priority under section 503(b)(9) of the Bankruptcy Code) enter into trade agreements, substantially in the form attached to the Proposed Interim Order as **Exhibit 1** (each, a "**Trade Agreement**").  A Trade Agreement, once agreed to and accepted by a Critical Vendor, will be a legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein.

8

19.      The Debtors also seek limited authority to pay Critical Vendor Claims in the event no Trade Agreement has been executed or if the Debtors determine, in their business judgment, that a formal Trade Agreement is prohibitive or unnecessary to provide for the continued provision of goods or services on a postpetition basis; provided that, unless otherwise agreed by the Debtors, if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement has been executed), and subject to any Trade Agreement that may be executed: (i) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore such payment will be immediately recoverable by the Debtors in cash upon written request; (ii) upon recovery by the Debtors, any prepetition claim of such party will be reinstated as if the payment had not been made; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, recoupments, claims, provisions for payment of any claims, or otherwise.

## Relief Requested Should Be Granted

### A.      Payment of Critical Vendor Claims is Warranted Under Section 363(b)(1) of the Bankruptcy Code and Doctrine of Necessity

20.      A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1).   Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use

of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

21.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.    11 U.S.C. § 1107(a).    Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

22.    Further, in a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior

to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

23.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtors' continued operation); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) ("[A] per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code.").  The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . . ."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

24.     In addition, the Court may rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's

11

business.  *See*, *e.g.*, *Just for Feet*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

25.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. Authorizing the Debtors to pay prepetition amounts related to Critical Vendor Claims is in the best interests of the Debtors, their estates, and their stakeholders.  As described above, the Debtors and their advisors have reviewed each of the Debtors' vendors in careful detail with an eye toward each vendor's importance to the Debtors' operational viability.  The list of Critical Vendors resulted from the Debtors whittling the vendor universe down to only those who, left unpaid, could bring the Debtors' businesses to a halt.

26.     The relief requested in this Motion will also allow the Debtors to require that the Critical Vendors continue providing goods and services to the Debtors on Customary Trade Terms.  Absent such relief, Critical Vendors may have no incentive to continue providing the Debtors with trade credit, and a number of vendors have informed the Debtors that they will stop providing goods and services altogether upon a single missed or late payment.  Such results could be catastrophic for the Debtors, their estates, and all stakeholders.  In contrast, the preservation of working capital through the retention or reinstatement of trade credit in sufficient amounts and on favorable terms will conserve liquidity, stabilize the Debtors' business

operations, and facilitate their ability to maximize value.  The retention and reinstatement of Customary Trade Terms will enable the Debtors to restore the confidence of their customers and mitigate the uncertainty caused by the commencement of these chapter 11 cases.

27.     Given the nature of the goods and services provided by the Critical Vendors, the consequences if the Critical Vendors cease providing such goods and services to the Debtors, and the resulting loss of value to the Debtors' estates, the relief requested herein is necessary and appropriate.  The Debtors' authority to address their Critical Vendor Claims in the initial days of these cases will send a clear signal to their suppliers and customers that the Debtors are both willing and able to conduct business as usual after the Commencement Date. Failure to authorize the Debtors to pay Critical Vendor Claims as provided herein would jeopardize the Debtors' chapter 11 restructuring strategy, and, ultimately, the success of these chapter 11 cases.

**B.     Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

28.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor-in-possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such Banks, and such

Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

### Reservation of Rights

29.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

30.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b).  As described above, failure to pay the Critical Vendor Claims immediately and in the ordinary course would expose the Debtors' businesses to imminent and unnecessary risk.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Bankruptcy Rules 6004(a) and (h)

31.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration and the Vendor Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Notice

32.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) counsel to the Ad Hoc First Lien Group; (v) the Prepetition ABL Agent; (vi) the Prepetition RCF Agent; (vii) the First Lien Term Loan Agent; (viii) the 9.000% First Lien Notes Trustee/Collateral Agent; (ix) the 6.125% First Lien Notes Trustee/Collateral Agent; (x) the Second Lien Notes Trustee/Collateral Agent; (xi) the Unsecured Notes Trustee/Collateral Agent; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the District of Delaware; (xiv) the Securities and Exchange Commission; and (xv) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that no further notice is

15

required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*remainder of page intentionally left blank*]

16

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 19, 2018
        Wilmington, Delaware

/s/ Zachary I. Shapiro
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115)
Brett M. Haywood (No. 6166)
One Rodney Square
910 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* admission pending)
Matthew S. Barr (*pro hac vice* admission pending)
Ryan Preston Dahl (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

---------------------------------------------------------- x
                             :

**In re**                            :       **Chapter 11**
                             :

**CLAIRE'S STORES, INC.,** *et al.*,   :       **Case No. 18– _____**
                             :

                   **Debtors.**[1]   :       **(Jointly Administered)**
                             :

---------------------------------------------------------- x

# INTERIM ORDER
# (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
# OBLIGATIONS TO CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Claire's Stores, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of orders (i) authorizing the Debtors to pay Critical Vendor Claims in an amount not to exceed the Critical Vendor Cap absent further order of the Court and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Claire's Inc. (6919); Claire's Stores, Inc. (0416); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Puerto Rico Corp. (6113); and CSI Canada LLC (7936). The Debtors' corporate headquarters and service address is 2400 West Central Road, Hoffman Estates, Illinois 60192.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration and the Vendor Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

#### IT IS HEREBY ORDERED THAT

1.　　The Motion is granted on an interim basis to the extent set forth herein.

2.　　The Debtors are authorized to pay, or cause to be paid, Critical Vendor Claims in an amount not to exceed **$7.9 million** (the "**Critical Vendor Cap**") absent further order of the Court.

3.　　The Debtors shall undertake all appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtors, substantially in the form annexed hereto as **Exhibit 1**, as a condition of payment of each such Critical Vendor's Critical Vendor Claims.　The form of Trade agreement is hereby approved, and the Debtors are authorized to negotiate, modify, or amend the form of Trade Agreement in their reasonable business judgment.

4.　　The Debtors are authorized, but not directed, to condition payment of Critical Vendor Claims upon entry into Trade Agreements in the exercise of their reasonable business judgment.

2

5.      If any party accepts payment pursuant to the relief requested by this Interim Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement has been executed), and subject to any Trade Agreement that may be executed or otherwise agreed by the Debtors: (i) such payment may be deemed by the Debtors to be an improper postpetition transfer on account of a prepetition claim, and therefore such payment will be immediately recoverable by the Debtors in cash upon written request; (ii) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for a Critical Vendor to file a reinstated claim will be the later of (x) the general bar date established by order of the Court or (y) thirty (30) days after the Debtors provide written notice to the Critical Vendor of the reinstatement of its claim; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, recoupments, claims, provisions for payment of any claims, or otherwise.

6.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or

3

transfers are dated prior to, on, or subsequent to the Commencement Date, without any duty to inquire otherwise.

7.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Critical Vendor Claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

8.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary in this Interim Order, any payment made or to be made hereunder, and any authorization herein, shall be subject to the applicable requirements (if any) imposed on the Debtors under any order(s) of this Court approving any postpetition secured debtor-in-possession financing (any such order, a "**DIP Order**"), including, without limitation, any budget in connection therewith.  In the event of any conflict between the terms of this Interim Order and a DIP Order, the terms of the applicable DIP Order shall control (solely to the extent of such conflict).

4

10.     The Debtors shall maintain a matrix (the "**Critical Vendor Matrix**") (i) identifying each Critical Vendor paid pursuant to this Interim Order; (ii) setting forth the amount paid to each Critical Vendor on account of its Critical Vendor Claim and whether such payment was disbursed by RSI; (iii) identifying the general type of goods or services provided by each Critical Vendor; and (iv) whether a Trade Agreement has been entered into with such Critical Vendor. Starting fourteen (14) days after entry of this Interim Order and every fourteen (14) days thereafter, the Debtors shall provide or cause to be provided the Critical Vendor Matrix to (a) the U.S. Trustee, (b) counsel to the DIP Agent, (c) counsel to the Ad Hoc First Lien Group, and (d) counsel for any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, all on a professional-eyes-only basis; provided that, the foregoing parties in clauses (a) through (d) (collectively, the "**Matrix Recipients**") of this paragraph 10 shall keep the Critical Vendor Matrix confidential on a professional-eyes-only basis and shall not disclose any of the information contained in the Critical Vendor Matrix to any party without the prior written consent (email being sufficient) of the Debtors or an order of the Court.  Upon request, but in their own discretion, the Debtors may disclose the Critical Vendor Matrix to parties other than the Matrix Recipients on terms acceptable to the Debtors.

11.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

12.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

13.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

14.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

15.     The Final Hearing shall be held on _____, 2018, at _____ (prevailing Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com), Matthew S. Barr, Esq. (matt.barr@weil.com), Ryan Preston Dahl, Esq. (ryan.dahl@weil.com), and Danielle D. Donovan, Esq. (danielle.donovan@weil.com)),  and (b) Richards, Layton & Finger, P.A., One Rodney Square, 910 N. King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com), Zachary I. Shapiro, Esq. (shapiro@rlf.com), and Brett M. Haywood, Esq. (haywood@rlf.com)); (ii) counsel to the DIP Agent, (a) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611 (Attn: Richard A. Levy, Esq. (richard.levy@lw.com)), and (b) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: Annemarie V. Reilly, Esq. (annemarie.reilly@lw.com)); and (iii) counsel to the Ad Hoc First Lien Group, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com) and Brian S. Lennon, Esq. (blennon@willkie.com)), and (b) Morris, Nichols, Arsht & Tunnell, LLP, Rodney Square, 1201 North Market Street, Wilmington, Delaware 19899 (Attn: Robert Dehney, Esq. (rdehney@mnat.com)) so as to be received by no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2018**.

16.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

17.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2018
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

7

## Exhibit 1

**Form of Trade Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE.  THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

[•] (the "**Company**"), on the one hand, and the supplier identified in the signature block below ("**Supplier**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of the date in the Supplier's signature block below.

### Recitals

WHEREAS on [___], 2018 (the "**Commencement Date**"), Claire's Stores, Inc. and certain of its indirect and direct subsidiaries and related entities (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

WHEREAS on [___], 2018, the Court entered its *Interim Order Granting Debtors (I) Authority to Pay Certain Prepetition Obligations to Critical Vendors and (II) Related Relief* (the "**Interim Critical Vendor Order**")[1] [Docket No. [__]] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.

WHEREAS prior to the Commencement Date, Supplier delivered goods to and/or performed services for the Company, and the Company paid Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Supplier may hold against the Company.

### Agreement

1.    Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.    Supplier Payment.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[•] (the "**Agreed**

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Critical Vendor Order.

**Supplier Claim**").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[•] on account of its prepetition claim (the "**Supplier Payment**") (without interest, penalties, or other charges), as such amounts become due and payable in the ordinary course.

3.      Agreement to Supply.

a.      Supplier shall supply goods and/or perform services to or for the Company, and the Company shall accept and pay for goods and/or service from Supplier, for the duration of the Debtors chapter 11 cases based on the following "Customary Trade Terms": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 180 days prior to the Commencement Date except for any partial payments or other payments (or assurances) Company made with respect to any unfinished product.  "Duration of the Debtors' chapter 11 cases" means the earlier of:  (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; (iii) conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a default under any of the Company's debtor-in-possession financing facilities that results in the Company losing access to funds available under any such facility.

b.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.  For the avoidance of doubt, such Customary Trade Terms include, but are not limited to:

c.      Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that accrued as of the Commencement Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.      Other Matters.

a.      Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.  The Supplier Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan.

b.      Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 cases.

2

c. Supplier will not file or otherwise assert against the Company, its assets, or any other affiliated person or entity, or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising from prepetition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

5. <u>Breach</u>.

a. In the event that the Company pays Supplier its Supplier Payment and Supplier is determined to have breached this Trade Agreement (a "**Supplier Breach**"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

c. Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies. Notwithstanding the foregoing, in the event of a specific performance action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

d. In the event the Company fails to pay for goods or services delivered postpetition in accordance with this Trade Agreement, and the Company fails to cure such default within ten (10) days after receiving notice of such default, the Supplier shall have the right to terminate this Trade Agreement, in which event the Supplier (i) shall have no obligation to continue to provide goods or services to the Company, and (ii) reserves its rights to file a timely proof of claim for any alleged unpaid amounts of the Supplier Payment.

6. <u>Notice</u>.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Claire's Stores, Inc.
2400 West Central Road
Hoffman Estates, IL 60192
Attn: Stephen Sernett
E-mail: Stephen.Sernett@claires.com

and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Alex Welch and David Li
E-mail: alex.welch@weil.com
         david.li@weil.com
Facsimile: (212) 310-8007

and

Richards, Layton & Finger, P.A.
One Rodney Square
910 N. King Street
Wilmington, Delaware 19801
Attn: Daniel J. DeFranceschi
E-mail: defranceschi@rlf.com
Facsimile: (302) 651-7701

7.    <u>Representations and Acknowledgements</u>.    The Parties agree, acknowledge and represent that:

a.    the Parties have reviewed the terms and provisions of the Interim Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Interim Critical Vendor Order;

b.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Vendor Orders;

c.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Interim Critical Vendor Order, the Bankruptcy Code, or applicable law; and

4

d.      in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8.      <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); <u>provided that</u> if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; provided, further, that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9.      <u>Miscellaneous</u>.

a.      The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b.      This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

c.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.      This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

*[Signature page follows]*

RLF1 19027822V.1

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:


**[COMPANY]**                                    **[SUPPLIER]**
_____          _____
By:                                              By:
Title:                                           Title:
                                                 Address:

                                                 Date:

6

**Exhibit B**

**Proposed Final Order**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re                                                        :        Chapter 11
                                                             :
CLAIRE'S STORES, INC., et al.,                               :        Case No. 18– _____
                                                             :
                            Debtors.1                        :        (Jointly Administered)
                                                             :
------------------------------------------------------------ x
```

## FINAL ORDER (I) AUTHORIZING
## THE DEBTORS TO PAY CERTAIN PREPETITION
## OBLIGATIONS TO CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Claire's Stores, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of orders (i) authorizing the Debtors to pay Critical Vendor Claims in an amount not to exceed the Critical Vendor Cap absent further order of the Court and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Claire's Inc. (6919); Claire's Stores, Inc. (0416); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Puerto Rico Corp. (6113); and CSI Canada LLC (7936).  The Debtors' corporate headquarters and service address is 2400 West Central Road, Hoffman Estates, Illinois 60192.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the First Day Declaration and the Vendor Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1. The Motion is granted on a final basis to the extent set forth herein.

2. The Debtors are authorized to pay, or cause to be paid, Critical Vendor Claims in an amount not to exceed **$11.7 million** (the "**Critical Vendor Cap**") absent further order of the Court.

3. The Debtors shall undertake all appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtors.  The form of Trade Agreements, substantially in the form annexed hereto as **Exhibit 1**, is hereby approved, and the Debtors are authorized to negotiate, modify, or amend the form of Trade Agreement in their reasonable business judgment.

4. The Debtors are authorized, but not directed, to condition payment of Critical Vendor Claims upon entry into Trade Agreements in the exercise of their reasonable business judgment.

5.       If any party accepts payment pursuant to the relief requested by this Final Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement has been executed), and subject to any Trade Agreement that may be executed or otherwise agreed by the Debtors: (i) such payment may be deemed by the Debtors to be an improper postpetition transfer on account of a prepetition claim, and therefore such payment will be immediately recoverable by the Debtors in cash upon written request; (ii) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for a Critical Vendor to file a reinstated claim will be the later of (x) the general bar date established by order of the Court or (y) thirty (30) days after the Debtors provide written notice to the Critical Vendor of the reinstatement of its claim; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, recoupments, claims, provisions for payment of any claims, or otherwise.

6.       Each of the Banks at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or

3

transfers are dated prior to, on, or subsequent to the Commencement Date, without any duty to inquire otherwise.

7.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Critical Vendor Claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

8.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary in this Final Order, any payment made or to be made hereunder, and any authorization herein, shall be subject to the applicable requirements (if any) imposed on the Debtors under any order(s) of this Court approving any postpetition secured debtor-in-possession financing (any such order, a "**DIP Order**"), including, without limitation, any budget in connection therewith.  In the event of any conflict between the terms of this Final Order and a DIP Order, the terms of the applicable DIP Order shall control (solely to the extent of such conflict).

4

10. The Debtors shall maintain a matrix (the "**Critical Vendor Matrix**") (i) identifying each Critical Vendor paid pursuant to this Interim Order; (ii) setting forth the amount paid to each Critical Vendor on account of its Critical Vendor Claim and whether such payment was disbursed by RSI; (iii) identifying the general type of goods or services provided by each Critical Vendor; and (iv) whether a Trade Agreement has been entered into with such Critical Vendor. Starting fourteen (14) days after entry of this Final Order and every fourteen (14) days thereafter, the Debtors shall provide or cause to be provided the Critical Vendor Matrix to (a) the U.S. Trustee, (b) counsel to the DIP Agent, (c) counsel to the Ad Hoc First Lien Group, and (d) counsel for any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, all on a professional-eyes-only basis; provided that, the foregoing parties in clauses (a) through (d) (collectively, the "**Matrix Recipients**") of this paragraph 10 shall keep the Critical Vendor Matrix confidential on a professional-eyes-only basis and shall not disclose any of the information contained in the Critical Vendor Matrix to any party without the prior written consent (email being sufficient) of the Debtors or an order of the Court. Upon request, but in their own discretion, the Debtors may disclose the Critical Vendor Matrix to parties other than the Matrix Recipients on terms acceptable to the Debtors.

11. Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

12. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

13. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

5

14.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

15.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2018
      Wilmington, Delaware

                                    _____
                                      UNITED STATES BANKRUPTCY JUDGE

RLF1 19027822V.1

## Exhibit 1

**Form of Trade Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE.  THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

[•] (the "**Company**"), on the one hand, and the supplier identified in the signature block below ("**Supplier**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of the date in the Supplier's signature block below.

## Recitals

WHEREAS on [___], 2018 (the "**Commencement Date**"), Claire's Stores, Inc. and certain of its indirect and direct subsidiaries and related entities (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

WHEREAS on [___], 2018, the Court entered its *Interim Order Granting Debtors (I) Authority to Pay Certain Prepetition Obligations to Critical Vendors and (II) Related Relief* (the "**Interim Critical Vendor Order**") [Docket No. [__]] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.

WHEREAS on [___], 2018 the Court entered its *Final Order (I) Authorizing Debtors to Pay Prepetition Obligations to Critical Vendors and (II) Granting Related Relief* (as may be entered, the "**Final Critical Vendor Order**" and together with the Interim Critical Vendors Order, the "**Critical Vendor Orders**") authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Commencement Date, Supplier delivered goods to and/or performed services for the Company, and the Company paid Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Supplier may hold against the Company.

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Orders.

**Agreement**

1.    <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.    <u>Supplier Payment</u>.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[•] (the "**Agreed Supplier Claim**").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[•] on account of its prepetition claim (the "**Supplier Payment**") (without interest, penalties, or other charges), as such amounts become due and payable in the ordinary course.

3.    <u>Agreement to Supply</u>.

a.    Supplier shall supply goods and/or perform services to or for the Company, and the Company shall accept and pay for goods and/or service from Supplier, for the duration of the Debtors chapter 11 cases based on the following "Customary Trade Terms": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 180 days prior to the Commencement Date except for any partial payments or other payments (or assurances) Company made with respect to any unfinished product.  "Duration of the Debtors' chapter 11 cases" means the earlier of:  (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; (iii) conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a default under any of the Company's debtor-in-possession financing facilities that results in the Company losing access to funds available under any such facility.

b.    The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.  For the avoidance of doubt, such Customary Trade Terms include, but are not limited to:

_____

_____

c.    Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that accrued as of the Commencement Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.    <u>Other Matters</u>.

a.    Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the

2

Customary Trade Terms then in effect.  The Supplier Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan

       b.     Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 cases.

       c.     Supplier will not file or otherwise assert against the Company, its assets, or any other affiliated person or entity, or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising from prepetition agreements or transactions.  Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

       5.     <u>Breach</u>.

       a.     In the event that the Company pays Supplier its Supplier Payment and Supplier is determined to have breached this Trade Agreement (a "**Supplier Breach**"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

       b.     In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

       c.     Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company.  Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement.  Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies. Notwithstanding the foregoing, in the event of a specific performance action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

       d.     In the event the Company fails to pay for goods or services delivered postpetition in accordance with this Trade Agreement, and the Company fails to cure such default within ten (10) days after receiving notice of such default, the Supplier shall have the

right to terminate this Trade Agreement, in which event the Supplier (i) shall have no obligation to continue to provide goods or services to the Company, and (ii) reserves its rights to file a timely proof of claim for any alleged unpaid amounts of the Supplier Payment.

6.    <u>Notice</u>.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Claire's Stores, Inc.
2400 West Central Road
Hoffman Estates, IL 60192
Attn: Stephen Sernett
E-mail: Stephen.Sernett@claires.com

and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Alex Welch and David Li
E-mail: alex.welch@weil.com
        david.li@weil.com
Facsimile: (212) 310-8007

and

Richards, Layton & Finger, P.A.
One Rodney Square
910 N. King Street
Wilmington, Delaware 19801
Attn: Daniel J. DeFranceschi
E-mail: defranceschi@rlf.com
Facsimile: (302) 651-7701

7.    <u>Representations and Acknowledgements</u>.  The Parties agree, acknowledge and

represent that:

a.    the Parties have reviewed the terms and provisions of the Critical Vendor Orders and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Orders

4

b.  any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Vendor Orders;

c.  if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Vendor Orders, the Bankruptcy Code, or applicable law; and

d.  in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8.  <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); <u>provided that</u> if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; provided, further, that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9.  <u>Miscellaneous</u>.

a.  The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b.  This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

c.  Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.  This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.  The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature page follows*]

6

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[COMPANY]**                                   **[SUPPLIER]**

_____                         _____

By:                                             By:
Title:                                          Title:
                                                Address:

                                                Date: