**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Claire's Stores, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-10584 (MFW)<br>(Jointly Administered)<br><br>Re: D.I. 325 |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO MOTION OF OAKTREE CAPITAL MANAGEMENT FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105, 363 AND 1107 OF THE BANKRUPTCY CODE DIRECTING THE DEBTORS TO MODIFY THEIR MARKETING PROCESS**

The Official Committee of Unsecured Creditors (the "Committee") of Claire's Stores, Inc. *et al.*, as debtors and debtors-in-possession (collectively, the "Debtors"), by and through its counsel Cooley LLP and Bayard, P.A., hereby submits this statement (the "Statement") regarding Oaktree Capital Management L.P.'s ("Oaktree") motion (the "Motion") [D.I. 325] pursuant to sections 105, 363, and 1107 of the Bankruptcy Code, seeking entry of an order directing the Debtors to modify the process by which the Debtors may solicit proposals to purchase all or substantially all of their assets or to otherwise serve as the sponsor for transactions that could constitute, or serve as the basis for, a chapter 11 plan of reorganization for the Debtors (collectively, the "Marketing Process"), and respectfully represents as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Claire's Inc. (6919); Claire's Stores, Inc. (0416); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Puerto Rico Corp. (76113); and CSI Canada LLC (7936). The Debtors' corporate headquarters and service address is 2400 West Central Road, Hoffman Estates, Illinois 60192.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**STATEMENT**

1. The Committee concurs with Oaktree that the Marketing Process is not a true market test of the restructuring transactions embodied by the Plan, and that meaningful modifications must be made if these estates are to generate any value maximizing alternatives to the RSA Plan.

2. From the outset of these cases, the Debtors' repeated statements that they are seeking alternative restructuring proposals have been little more than lip service. Rather than aggressively solicit interest in any transaction with an implied value higher than the $1.4 billion value that the Debtors ascribe to the RSA Plan, the Debtors have strictly adhered to the RSA's requirement that they only consider proposals (i) valued in excess of $1.9 billion and (ii) that include a "Payout Event" of non-debtor indebtedness owed to RSA counterparties. The whopping $500 million overbid required by the Debtors (and the obviously artificially low enterprise value upon which it is based) and the unreasonable condition that bidders retire significant debt outside the Debtors' capital structure in order to qualify to compete with the RSA Plan has sent an unmistakable signal to the distressed marketplace that the Debtors do not intend to subject the RSA Plan to any serious competition.

3. Against this backdrop, attracting third party bids for the Debtors' business prior to confirmation is difficult, if not impossible. The Debtors' steadfast compliance with the RSA has undeniably tainted the Marketing Process, and could preclude the estates from unlocking untold value for the Debtors' stakeholders. As such, the Committee supports any modification of the Marketing Process that requires the Debtors, in consultation with Oaktree and the Committee, to foster a truly competitive process that actively solicits any and all proposals that are higher or otherwise better than the RSA Plan.

4. In so doing, the Committee is mindful that the Marketing Process was not conceived with value-maximization in mind. On the contrary, the Debtors plan to use the failed Marketing Process to generate evidence to support the depressed enterprise valuation upon which the confirmability of the RSA Plan is entirely predicated. Such a reliance on the flawed Marketing Process only further obscures the true value of the Debtors' business to the detriment of these estates, and the modifications to the Marketing Process proposed by Oaktree are therefore appropriate and necessary to bring a modicum of fairness and transparency to the postpetition sale process.

5. Nonetheless, a belated and more robust marketing of the Debtors' assets will not cure all the defects that currently render the Plan unconfirmable. Indeed, the RSA Plan still suffers from multiple fatal flaws in its current form, as (i) the Plan's distribution scheme does not provide general unsecured creditors with their fair share in violation of the absolute priority rule; (ii) the over-market exit facility upon which the Plan is predicated is not being subjected to its own rigorous and independent market test; and (iii) the Plan impermissibly provides Apollo and its affiliates with broad releases for no consideration. These issues must also be addressed irrespective of any modifications to the Marketing Process.

6. The Committee remains confident that given the Debtors' positive operating performance in North America and the permissive DIP milestones (which do not require an approved disclosure statement until September 15, 2018), the Debtors can still achieve a confirmable plan of reorganization or other value-maximizing transaction that provides for a fair and meaningful recovery to general unsecured creditors. The Committee looks forward to continuing its work with the Debtors and their other stakeholders to achieve this successful and attainable result.

**WHEREFORE**, the Committee supports entry of an order granting the Motion, and granting such other and further relief as the Court deems just and proper.

Dated: June 11, 2018
       Wilmington, Delaware

BAYARD P.A.

    */s/Erin R. Fay*
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: jalberto@bayardlaw.com
      efay@bayardlaw.com

-and-

COOLEY LLP
Cathy Hershcopf
Seth Van Aalten
Michael Klein
Robert Winning
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: chershcopf@cooley.com
      svanaalten@cooley.com
      mklein@cooley.com
      rwinning@cooley.com

*Co-Counsel for the Official Committee of Unsecured Creditors*